1 | McGREGOR W. SCOTT
United States Attorney
2 | SAMUEL WONG
PHILIP SCARBOROUGH
3 | Assistant United States Attorneys
501 I Street, Suite 10-100
4 | Sacramento, CA 95814
Telephone:  (916) 554-2772
5 | Facsimile:  (916) 554-2900



**FILED**

**JUL 08 2019**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

6

7 | Attorneys for Plaintiff
United States of America

8

9 | IN THE UNITED STATES DISTRICT COURT

10 | EASTERN DISTRICT OF CALIFORNIA

11

12 | UNITED STATES OF AMERICA,

CASE NO.  2:18-CR-068-KJM

13 | Plaintiff,

PLEA AGREEMENT RE: AMERICAN
BIODIESEL, INC.

14 | v.

Date: December 17, 2018
Time: 9:00 a.m.
Court: Hon. Kimberly J. Mueller

15 | AMERICAN BIODIESEL, INC., dba
COMMUNITY FUELS, ET AL.,

16 | Defendants.

17

18

19 | I.   **INTRODUCTION**

20 | A.   **Scope of Agreement.**

The Indictment in this case charges defendant American Biodiesel, Inc., dba Community Fuels

21 | (referred to hereafter as "defendant," "American Biodiesel," or "Community Fuels") with violating 18

22 | U.S.C. § 371 - conspiracy; 33 U.S.C. §§ 1317(d) and 1319(c)(4), and 18 U.S.C. § 2(a) and (b) -

23 | tampering with monitoring equipment (12 Counts); 33 U.S.C. §§ 1317(d) and 1319(c)(2)(A), 40 C.F.R.

24 | § 403.5(b)(2), and 18 U.S.C. § 2(a) and (b) - unlawful discharge of industrial wastewater (2 Counts); and

25 | 18 U.S.C. § 1001(a)(2) - false statements.  This document contains the complete Plea Agreement

26 | between the United States Attorney's Office for the Eastern District of California (the "United States")

27 | and defendant regarding this case.  This Plea Agreement is limited to the United States Attorney's

28

PLEA AGREEMENT RE AMERICAN
BIODIESEL, INC.

1

1  Office for the Eastern District of California and cannot bind any other federal, state, or local

2  prosecuting, administrative, or regulatory authorities.

3  **B.    Rule 11(c)(1)(C) Specific Sentence Agreement.**

4  Notwithstanding anything to the contrary, the United States and defendant agree that the

5  provisions in this paragraph shall apply to this Plea Agreement only in the event that defendant complies

6  with and satisfies all of its obligations under this Plea Agreement.  Except in the event that defendant

7  commits an obstruction of justice, in which case the United States may request a higher sentence, the

8  United States and defendant agree, pursuant to F.R.Crim.P. 11(c)(1)(C), to recommend that the Court

9  sentence as a result of defendant's convictions on Counts One, Eleven, and Fifteen as follows:

10  a.    Defendant shall pay at the time of sentencing:  (1) $248,947 in full restitution to Port of

11  Stockton (comprised of $192,450 for sewage clogs and overflow repairs, and damage to

12  infrastructure, and $56,497 for payments made by Port of Stockton to City of Stockton for

13  treatment of unlawfully discharged wastewater); and (2) $7,259 to the City of Stockton in full

14  payment for damage and repairs to sewer infrastructure.

15  b.    Defendant shall pay a fine of $401,000 to the United States in installments of $135,000

16  due at the time of sentencing, $133,000 due on the first annual anniversary of sentencing, and

17  $133,000 due on the second annual anniversary of sentencing.

18  c.    Defendant shall serve a probationary term of three years.  As part of the conditions of

19  probation, defendant shall pay restitution and the fine described above.  In addition, as part of the

20  conditions of probation, defendant shall irrevocably consent to allow the United States

21  Environmental Protection Agency, the Port of Stockton, the City of Stockton Municipal Utilities

22  Department, and San Joaquin County Environmental Health Department, and any personnel

23  assisting those agencies, to enter the premises of defendant's manufacturing plant at 809-C

24  Snedeker Avenue, Stockton, California, at any time, 24 hours a day/every day of the year, with

25  or without notice, and inspect, photograph, video-record, seize, collect, sample, and test any

26  substances and liquids to ensure defendant's compliance with all environmental laws and/or its

27  wastewater discharge permit with the City of Stockton Municipal Utilities Department.

28  The Court may accept or reject the Plea Agreement.  If the Court accepts the Plea Agreement,

PLEA AGREEMENT RE AMERICAN                    2
BIODIESEL, INC.

1  the Court will inform the parties that it will embody in the judgment and sentence the disposition

2  provided for in this Plea Agreement. If the Court rejects this Plea Agreement, the Court shall so advise

3  the parties, and shall allow either party the opportunity to withdraw from this Plea Agreement. If either

4  party withdraws from this Plea Agreement, the Plea Agreement shall be null and void.

## II.   DEFENDANT'S OBLIGATIONS

### A.   Guilty Pleas.

7  Defendant shall plead guilty to:  Count One charging conspiracy, in violation of 18 U.S.C. § 371;

8  Count Eleven charging tampering with monitoring equipment, in violation of 33 U.S.C. §§ 1317(d) and

9  1319(c)(4), and 18 U.S.C. § 2(a) and (b); and Count Fifteen charging unlawful discharge of industrial

10  wastewater, in violation of 33 U.S.C. §§ 1317(d) and 1319(c)(2)(A), 40 C.F.R. § 403.5, and 18 U.S.C.

11  § 2(a) and (b). Defendant agrees that it is in fact guilty of these charges and that the facts set forth in the

12  Factual Basis for Plea attached hereto as Exhibit A are true and accurate.

13  Defendant agrees that this Plea Agreement shall be filed with the Court and become a part of the

14  record of the case.

15  Defendant agrees that its statements in signing this Agreement, including the factual admissions

16  set forth in the factual basis, shall be admissible and useable against defendant by the United States in

17  any subsequent criminal or civil proceedings, even if defendant fails to enter a guilty plea pursuant to

18  this Agreement. Defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the

19  extent that these rules are inconsistent with this paragraph or with this Plea Agreement generally.

### B.   Restitution.

21  Defendant agrees to request that the Court enter an order, pursuant to 18 U.S.C. § 3663(a)(3),

22  directing defendant to pay at the time of sentencing:  (1) $248,947 in full restitution to Port of Stockton

23  (comprised of $192,450 for sewage clogs and overflow repairs, and damage to infrastructure, and

24  $56,497 for payments made by Port of Stockton to City of Stockton for treatment of unlawfully

25  discharged wastewater); and (2) $7,259 to the City of Stockton in full payment for damage and repairs to

26  sewer infrastructure. Defendant shall pay these restitution amounts prior to its scheduled court

27  appearance for sentencing by tendering a cashier's or certified check made payable to the Clerk of the

28  Court, with this case's docket number indicated on the payment instrument.

PLEA AGREEMENT RE AMERICAN                           3
BIODIESEL, INC.

1    The Clerk of the Court shall remit the total $256,206 in restitution funds as follows:  (1)

2    $248,947 payable to the "Port of Stockton" and sent to "Port of Stockton, 2201 W. Washington Street,

3    Stockton California 95203, Attention: Jeff Wingfield"; and (2) $7,259 payable to the "City of Stockton"

4    and sent to "Richard Stiffler, Technical Services Supervisor, City of Stockton, Municipal Utilities

5    Department, 2500 Navy Drive, Stockton, California 95206".

6    Defendant understands that this Plea Agreement is voidable at the option of the United States if

7    defendant fails to pay the stipulated restitution prior to any scheduled court appearance for sentencing.

8    Defendant further agrees that it shall not attempt to discharge in any present or future bankruptcy

9    proceeding any restitution order imposed by the Court.

10    **C.    Fine.**

11    Defendant shall pay a fine of $401,000 to the United States in installments of $135,000 due at

12    the time of sentencing, $133,000 due on or before the first annual anniversary of sentencing, and

13    $133,000 due on or before the second annual anniversary of sentencing.  Payment of these amounts shall

14    be made by tendering a cashier's or certified check made payable to the Clerk of the Court, with this

15    case's docket number indicated on the payment instrument.

16    **D.    Special Assessment.**

17    Pursuant to 18 U.S.C. § 3013(a)(2)(B), defendant agrees to pay a special assessment of $400 per

18    count of conviction for a total $1,200 at the time of sentencing by delivering a check or money order

19    payable to the United States District Court to the United States Probation Office immediately before the

20    sentencing hearing.  Defendant understands that this Plea Agreement is voidable at the option of the

21    United States if it fails to pay the assessment prior to that hearing.

22    **E.    Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).**

23    If defendant violates this Plea Agreement in any way, withdraws any guilty plea, or tries to

24    withdraw any guilty plea, this Plea Agreement is voidable at the option of the United States.  The United

25    States will no longer be bound by its representations to defendant concerning the limits on criminal

26    prosecution and sentencing as set forth herein.  One way a defendant violates the Plea Agreement is to

27    commit any crime, or provide any statement or testimony which proves to be knowingly false,

28    misleading, or materially incomplete.  Any post-plea conduct by a defendant constituting obstruction of

PLEA AGREEMENT RE AMERICAN                    4
BIODIESEL, INC.

1  justice will also be a violation of the agreement.  The determination whether defendant has violated the

2  Plea Agreement shall be decided under a probable cause standard.  Defendant may seek Court review of

3  any determination made by the United States under this paragraph to void any of its obligations under

4  this Plea Agreement.

5        If defendant violates the Plea Agreement, withdraws any guilty plea, or tries to withdraw any

6  guilty plea, the United States shall have the right: (1) to prosecute defendant on any of the counts to

7  which it pleaded guilty; and (2) to file any new charges that would otherwise be barred by this Plea

8  Agreement.  Defendant shall thereafter be subject to prosecution for any federal criminal violation of

9  which the United States has knowledge, including perjury, false statements, and obstruction of justice.

10  The decision to pursue any or all of these options is solely in the discretion of the United States

11  Attorney's Office.

12        By signing this Plea Agreement, defendant agrees to waive any objections, motions, and

13  defenses that defendant might have to the United States' decision to exercise the options stated in the

14  previous paragraph.  Any prosecutions that are not time-barred by the applicable statute of limitations as

15  of the date of this Plea Agreement may be commenced in accordance with this paragraph,

16  notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement

17  and the commencement of any such prosecutions.  Defendant agrees not to raise any objections based on

18  the passage of time with respect to such counts including, but not limited to, any statutes of limitation or

19  any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any

20  counts that were not time-barred as of the date the Indictment was filed.

21        In addition: (1) all statements made by defendant to the United States or other designated law

22  enforcement agents, or any testimony given by defendant before a grand jury or other tribunal, whether

23  before or after this Plea Agreement, shall be admissible in evidence in any criminal, civil, or

24  administrative proceedings hereafter brought against defendant; and (2) defendant shall assert no claim

25  under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure,

26  Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by defendant

27  before or after this Plea Agreement, or any leads derived therefrom, should be suppressed.  By signing

28  this Plea Agreement, defendant waives any and all rights in the foregoing respects.

PLEA AGREEMENT RE AMERICAN                    5
BIODIESEL, INC.

F.     **Asset Disclosure.**

Defendant agrees to make a full and complete disclosure of any assets, income, and financial condition, and shall provide to the United States Attorney's Office beginning within fourteen days from the entry of defendant's guilty pleas the following monthly and year-to-date financial statements within two weeks of the preparation of the statements by a Certified Public Accountant or other accounting professional, if a Certified Public Accountant is not utilized by defendant, for the time period 2018 through 2021, to wit:  (1) balance sheets; (2) income statements; (3) cash flow statements; and (4) statements of shareholders' or owners' equity.  After the initial disclosure made within fourteen days from the entry of defendant's guilty pleas, updated disclosures shall be made monthly until the successful completion of defendant's probationary period.  Defendant stipulates and agrees that it shall not: (1) liquidate, withdraw, assign, transfer, encumber, secrete, and/or conceal any assets or income for the purpose of hindering, preventing, and/or defeating any restitution and/or fine collection efforts.  Defendant also agrees to have the Court enter an order to that effect.  Defendant understands that if it fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, it shall be considered in violation of the Plea Agreement, and the United States shall be entitled to the remedies set forth in section II.E above.

## III.     THE UNITED STATES' OBLIGATIONS

A.     **Dismissals/Other Charges.**

The United States agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending Indictment.  The United States also agrees not to reinstate any dismissed count except if this Plea Agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Stipulations Regarding Sentencing), and VII.B (Waiver of Appeal and Collateral Attack) herein.

B.     **Recommendations.**

1.     **Advisory Guidelines Range.**

The advisory guideline calculation in this matter is governed by Chapter 8, Part C of the Sentencing Guidelines, relating to the Sentencing of Organizations.  The specific Guidelines provisions governing this case are contained in U.S.S.G. § 8C2.1, Commentary, Application Notes, Background,

PLEA AGREEMENT RE AMERICAN                           6
BIODIESEL, INC.

1   which provides the fine guidelines do not apply to "counts for which the applicable guideline offense

2   level is determined under Chapter Two, Part Q (Offenses Involving the Environment). For such cases,

3   § 8C2.10 (Determining the Fine for Other Counts) is applicable." In general, under U.S.S.G. § 8C2.10,

4   the fine shall be set in accordance with the factors set forth in 18 U.S.C. §§ 3553 and 3572. Where,

5   however, it is readily ascertainable that a defendant cannot pay a minimum guideline sentence in

6   addition to restitution, it is not necessary to calculate the maximum guideline fine and a sentence below

7   the guideline range may be imposed. U.S.S.G. §§ 8C2.2(b) and 8C3.3(b). In the present case, the

8   United States has agreed to recommend the sentence set forth in this Rule 11(c)(1)(C) Plea Agreement

9   because it is consistent with the factors set forth in 18 U.S.C. §§ 3553 and 3572 and because defendant

10   has provided audited financial statements from which it is readily apparent that defendant's ability to

11   pay a meaningfully greater fine in addition to the restitution required under this Plea Agreement would

12   jeopardize defendant's continued existence.

13           2.      **Acceptance of Responsibility.**

14           The United States will recommend a two-level reduction (if the offense level is less than 16) or a

15   three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if it

16   clearly demonstrates acceptance of responsibility for any conduct as defined in U.S.S.G. § 3E1.1. This

17   includes an authorized officer or representative of defendant meeting with and assisting the probation

18   officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer,

19   and not otherwise engaging in new crimes and/or engaging in conduct that constitutes obstruction of

20   justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or

21   during the sentencing process or proceeding.

22       C.      <u>Use of Information for Sentencing.</u>

23           The United States is free to provide full and accurate information to the Court and Probation,

24   including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate

25   statements or arguments by defendant, any attorney, Probation, or the Court. Defendant also

26   understands and agrees that nothing in this Plea Agreement bars the United States from defending on

27   appeal or collateral review any sentence that the Court may impose.

28   ///

PLEA AGREEMENT RE AMERICAN                        7
BIODIESEL, INC.

## IV.   ELEMENTS OF THE OFFENSES

At a trial, the United States would have to prove beyond a reasonable doubt the following elements of the offenses to which defendant, a corporation, is pleading guilty:

First, in connection with all three charges to which defendant is pleading guilty, the United States must prove that each crime charged was: (a) committed by the corporation's officers, employees, or agents; (b) within the scope of their employment; and (c) at least, in part, for the benefit of the corporation. If all three of these elements are established, defendant is criminally responsible for the criminal acts committed by the corporation's officers, employees, or agents. *United States v. Singh*, 518 F.3d 236, 249-50 (4th Cir. 2008). In addition to these three elements, the United States must prove beyond a reasonable doubt the following additional elements:

**Count One of the Indictment charging a violation of 18 U.S.C. § 371, Conspiracy.**

Defendant is charged in Count One of the Indictment with conspiring with co-defendants Christopher Young and Jeremiah Young, and with others known and unknown to the Grand Jury to:

(1) discharge polluted industrial wastewater into the City of Stockton sewer system, in violation of defendant's permit issued by the City of Stockton and the Clean Water Act, specifically, 33 U.S.C. § 1317(d) and 40 C.F.R. §§ 403.5(b)(2);

(2) tamper with and render inaccurate the monitoring devices and methods, which defendant was required to maintain under its permit issued by the City of Stockton, for measuring the pH level of the industrial wastewater defendant discharged into the City of Stockton sewer system, in violation of 33 U.S.C. § 1319(c)(4); and

(3) tamper with and render inaccurate the monitoring devices and methods, which defendant was required to maintain under its permit issued by the City of Stockton, for measuring and recording the flow and volume of the industrial wastewater defendant discharged into the City of Stockton sewer system, in violation of 33 U.S.C. § 1319(c)(4).

In order for defendant to be found guilty of that charge, the United States must prove each of the following additional elements beyond a reasonable doubt:

First, beginning not later than in or about March 2009, and ending on or about December 1, 2016, there was an agreement between two or more persons to commit at least one crime as charged in

PLEA AGREEMENT RE AMERICAN BIODIESEL, INC.                    8

1   the Indictment;

2   Second, defendant became a member of the conspiracy knowing of at least one of its objects and

3   intending to help accomplish it; and

4   Third, one of the members of the conspiracy performed at least one overt act in or after March

5   2009 for the purpose of carrying out the conspiracy.

6   **Count Eleven of the Indictment charging a violation of 33 U.S.C. §§ 1317(d), 1319(c)(4);**
    **18 U.S.C. § 2(a) and (b) - Tampering With Monitoring Equipment.**

7

8   Defendant is charged with co-defendants Christopher Young, and Jeremiah Young in Count

9   Eleven with a violation of 33 U.S.C. §§ 1317(d), 1319(c)(4); 18 U.S.C. § 2(a) and(b) - tampering with

10  monitoring equipment.  In order for defendant to be found guilty of that charge, the United States must

11  prove each of the following additional two elements beyond a reasonable doubt:

12  First, defendant must act knowingly, and

13  Second, defendant must tamper with, or render inaccurate any monitoring device or method

14  required to be maintained under the Clean Water Act.

15  **Count Fifteen of the Indictment charging a violation of 33 U.S.C. §§ 1317(d), 1319(c)(2)(A); 40**
    **C.F.R. § 403.5(b)(2); 18 U.S.C. § 2(a) and (b) – Unlawful Discharge of Industrial Wastewater.**

16

17  Defendant is charged with co-defendants Christopher Young, and Jeremiah Young in Count

18  Fifteen with a violation of 33 U.S.C. §§ 1317(d), 1319(c)(4); 18 U.S.C. § 2(a) and(b) - tampering with

19  monitoring equipment.  In order for defendant to be found guilty of that charge, the United States must

20  prove each of the following additional two elements beyond a reasonable doubt:

21  First, a person operated a source; and

22  Second, that person knowingly caused the source to discharge wastewater in violation of the

23  pretreatment standard prohibiting the discharge of wastewater below 5.0 pH.

24  Under the Clean Water Act, "operator" means "any person who owns, leases, operates, controls

25  or supervises a source," *see* 33 U.S.C. § 1315 (a)(4), and a "new source" is "any building, structure,

26  facility, or installation from which there is or may be the discharge of pollutants." *See* 33 U.S.C.

27  § 1316(a)(3).

28  Defendant fully understands the nature and elements of the crimes charged in the Indictment to

PLEA AGREEMENT RE AMERICAN                    9
BIODIESEL, INC.

1 which it is pleading guilty, together with the possible defenses thereto, and has discussed them with its

2 attorney.

### V.    MAXIMUM SENTENCE

4      The maximum sentences that the Court can impose are as follows:

5      For Count One of the Indictment charging a violation of 18 U.S.C. § 371, conspiracy, a fine of

6 up to $500,000; however, if defendant derives pecuniary gain from the offense, or if the offense results

7 in pecuniary loss to a person other than defendant, defendant may be fined not more than the greater of

8 twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would

9 unduly complicate or prolong the sentencing process; a maximum 5 years' probation under 18 U.S.C.

10 § 3561; and a special assessment of $400 under 18 U.S.C. § 3013(a)(2).

11      For Count Eleven of the Indictment charging a violation of 33 U.S.C. §§ 1317(d), 1319(c)(4); 18

12 U.S.C. § 2(a) and (b), tampering with monitoring equipment, a fine of up to $500,000; however, if

13 defendant derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person

14 other than defendant, defendant may be fined not more than the greater of twice the gross gain or twice

15 the gross loss, unless imposition of a fine under this subsection would unduly complicate or prolong the

16 sentencing process; a maximum 5 years' probation under 18 U.S.C. § 3561; and a special assessment of

17 $400 under 18 U.S.C. § 3013(a)(2).

18      For Count Fifteen of the Indictment charging a violation of 33 U.S.C. §§ 1317(d), 1319(c)(2)(A);

19 40 C.F.R. § 403.5; 18 U.S.C. § 2(a) and (b), unlawful discharge of industrial wastewater, a fine of up to

20 $500,000; however, if defendant derives pecuniary gain from the offense, or if the offense results in

21 pecuniary loss to a person other than defendant, defendant may be fined not more than the greater of

22 twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would

23 unduly complicate or prolong the sentencing process; a maximum 5 years' probation under 18 U.S.C.

24 § 3561; and a special assessment of $400 under 18 U.S.C. § 3013(a)(2).

25      Defendant understands and agrees that the Court may run any sentence on any conviction

26 consecutively, in its discretion.

27 ///

28 ///

PLEA AGREEMENT RE AMERICAN
BIODIESEL, INC.

## VI.   SENTENCING DETERMINATION

### A.   Statutory Authority.

Defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence.  Defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence.  Defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines.  Defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B.   Stipulations Regarding Sentencing.

The parties agree that the Court shall impose the sentence agreed upon by the parties pursuant to F.R.Crim.P. 11(c)(1)(C) as set forth in Section I.B. of this Plea Agreement.

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights.

Defendant understands that by pleading guilty it is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statute[s] of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on its behalf; (f) to confront and cross-examine witnesses against it; and (g) not to be compelled to incriminate itself.

### B.   Waiver of Appeal and Collateral Attack.

Defendant understands that the law gives it a right to appeal any guilty plea, conviction, and sentence.  Defendant agrees as part of this Plea Agreement, however, to give up the right to appeal any guilty plea, conviction, and/or sentence imposed in this case as long as the sentence does not exceed the

PLEA AGREEMENT RE AMERICAN
BIODIESEL, INC.

11

1   statutory maximums for the offenses to which it is pleading guilty. Defendant understands that this

2   waiver includes, but is not limited to, any and all constitutional and/or legal challenges to any of

3   defendant's convictions and guilty pleas, including arguments that the statutes and regulations to which

4   defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts

5   attached to this Plea Agreement is insufficient to support any of defendant's guilty pleas.

6       So long as the Court's sentence is consistent with the parties' F.R.Crim.P. 11(c)(1)(C) Plea

7   Agreement, defendant specifically gives up the right to: (1) appeal any order of restitution and/or fine

8   the Court may impose; (2) bring a collateral attack, including, without limitation, a motion under 28

9   U.S.C. §§ 2255 or 2241, and/or any writ challenging any aspect of the guilty plea, conviction, or

10   sentence, except for non-waivable claims.

11       Defendant understands and agrees that as a result of the waiver of its rights in this section, it will

12   be forever barred from requesting that any court -- higher, lower, or at the same level of the district court

13   -- review any conviction and/or sentence in this case at any future time and it may not pursue any future

14   litigation after judgment and sentencing in this case.

15       Notwithstanding anything in the Plea Agreement to the contrary, if defendant ever attempts to

16   vacate any plea, dismiss any underlying charge, or modify or set aside any sentence on any count to

17   which it is pleading guilty, the United States shall have the rights set forth in paragraph II.E (Violation

18   of Plea Agreement by Defendant/Withdrawal of Plea(s)) herein.

19   **C.**   <u>**Waiver of Attorneys' Fees and Costs**</u>

20       Defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119

21   (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the

22   investigation and prosecution of all charges in the above-captioned matter and of any related allegations.

23

24

   **VIII.**   <u>**ENTIRE PLEA AGREEMENT**</u>

25       Other than this Plea Agreement, no agreement, understanding, promise, or condition between the

26   United States and defendant exists, nor will such agreement, understanding, promise, or condition exist

27   unless it is committed to writing and signed by defendant, counsel for defendant, and counsel for the

28   United States, or entered into on the Court's record.

PLEA AGREEMENT RE AMERICAN             12
BIODIESEL, INC.

## IX.   APPROVALS AND SIGNATURES

1

2   **A.   Defense Counsel:** I am defendant's attorney. I represent that all members of the Board

3   of Directors of American Biodiesel, Inc., ("Board of Directors") have received a copy of the Indictment

4   and this Plea Agreement. I fully explained each of these documents to the entire Board of Directors.

5   Each member of the Board of Directors has acknowledged to me understanding each of these

6   documents, and the corporation's rights, including those rights contained in F.R.Crim.P. 11(b)(1)(A)-

7   (O). I have fully discussed with the Board of Directors, and fully answered all questions posed by the

8   Board of Directors regarding the provisions of the Sentencing Guidelines which may apply to

9   defendant's case. The Plea Agreement accurately and completely sets forth the entirety of the Plea

10  Agreement. I concur in my client's decision to plead guilty as set forth in this Plea Agreement. Based

11  on my dealings with the Board of Directors, I believe the corporation is freely, voluntarily, and

12  intelligently entering into this Plea Agreement.

13     DATED: __12/17__, 2018

14                                          JOSEPH P. RUSSONIELLO
                                            PER RAMFJORD
15                                          Attorneys for defendant
                                            American Biodiesel, Inc.

16

17  **B.   Defendant:** I, Brad Baker, am the Chairman of the Board of American Biodiesel, Inc.,

18  ("American Biodiesel"). Pursuant to the attached "Certificate Of American Biodiesel, Inc., Board Of

19  Directors Resolutions" and "Resolution Memorializing Unanimous Written Consent Of The Board Of

20  Directors Of American Biodiesel, Inc.," I am authorized, empowered, and directed by the entire Board

21  of Directors of American Biodiesel to represent American Biodiesel before this Court in order to make

22  the admissions, statements, and confirmations in accordance with the Plea Agreement, including

23  entering the guilty pleas, and undertaking all obligations and agreements referenced in the Plea

24  Agreement on behalf of American Biodiesel.

25     I have received and fully read a copy of the Indictment and this Plea Agreement. I read, write,

26  and understand competently the English language. I have carefully reviewed each document with legal

27  counsel. Each document has been explained to me by legal counsel to my understanding. I understand

28  the Plea Agreement, and I voluntarily agree to it. I fully understand all of the rights under F.R.Crim.P.

PLEA AGREEMENT RE AMERICAN                    13
BIODIESEL, INC.

1   11(b)(1)(A)-(O) and the provisions of the Sentencing Guidelines which may otherwise apply to this

2   case. No promises or inducements have been made to me, other than those contained in this Plea

3   Agreement. In addition, no one has threatened or forced me in any way to enter into this Plea

4   Agreement. I am satisfied with the representation and effectiveness of legal counsel in this case. I do

5   not need or desire any additional time to review this Plea Agreement or to discuss it with legal counsel.

6

7        DATED: _12/17___, 2018

BRAD BAKER,
Chairman of the Board of
AMERICAN BIODIESEL, INC.
Defendant

8

9

10     **C.**     **Attorney for United States:** I accept and agree to this Plea Agreement on behalf of the

11   United States.

12

13        DATED: _December 17_, 2018

MCGREGOR W. SCOTT
United States Attorney

14

15        By:

SAMUEL WONG
PHILIP SCARBOROUGH
Assistant United States Attorneys

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT RE AMERICAN          14
BIODIESEL, INC.

1                                           **EXHIBIT "A"**

2                             **Factual Basis for Guilty Pleas**

3        The United States would prove through competent evidence beyond a reasonable doubt at trial

4 that:

5     **Count One of Indictment:**

6        American Biodiesel engaged in the commercial manufacture and sale of biodiesel fuel beginning

7 approximately in 2009 to the present. American Biodiesel operates a biodiesel fuel manufacturing plant

8 located at 809-C Snedeker Avenue, Stockton, California 95203. American Biodiesel's biodiesel

9 manufacturing plant is located on real property leased from the Port of Stockton within the Eastern

10 District of California.

11        Beginning in approximately 2009 and continuing into 2017, defendant Christopher Young was

12 employed as American Biodiesel's Director of Operations and was American Biodiesel's highest-

13 ranking employee at its manufacturing plant at 809-C Snedeker Avenue, Stockton. In his capacity as

14 Director of Operations, Christopher Young controlled and supervised all aspects of American

15 Biodiesel's biodiesel fuel manufacturing plant and directed the work tasks of all subordinate employees

16 at the plant for the benefit of the corporation.

17        Beginning approximately in 2014, defendant Jeremiah Young was employed as an Assistant

18 Operator with American Biodiesel at its biodiesel manufacturing plant in Stockton. Jeremiah Young is

19 the younger brother of Christopher Young. In his capacity as Assistant Operator, Jeremiah Young

20 performed various work-related tasks in the manufacture of biodiesel fuel at the plant for the benefit of

21 the corporation.

22        American Biodiesel manufactured biodiesel fuel through a chemical and heat process. American

23 Biodiesel's chemical process to manufacture biodiesel fuel involved reacting methanol with animal or

24 vegetable fats and oils to generate a fatty acid methyl ester, which was further processed into biodiesel

25 fuel and glycerin. American Biodiesel's commercial manufacture of biodiesel fuel used large amounts

26 of water and, in turn, generated vast amounts of wastewater polluted with methanol, glycerin, oils and

27 fats, and acids. American Biodiesel's industrial wastewater constituted a pollutant under the Clean

28 Water Act, within the meaning of 33 U.S.C. § 1362(6). American Biodiesel did not have the ability or

1   capacity to clean the large amounts of industrial wastewater polluted during its biodiesel fuel

2   manufacturing process.

3         The City of Stockton Municipal Utilities Department ("City of Stockton") operated a publicly

4   owned treatment works (sometimes referred to hereafter as "sewer system") which was subject to a

5   National Pollutant Discharge Elimination System ("NPDES") Permit issued by the Central Valley

6   Regional Water Quality Control Board. The City of Stockton provided wastewater treatment in the

7   geographic area in which American Biodiesel operated its biodiesel fuel manufacturing plant.  In order

8   to help ensure the proper and safe operation of its wastewater treatment plant, the City of Stockton

9   prohibited American Biodiesel from discharging certain levels of pollutants in, and/or excess quantities

10  of, wastewater.

11        The City of Stockton maintained a wastewater pretreatment program and issued ongoing periodic

12  permits to discharge wastewater to American Biodiesel.  American Biodiesel was unable to implement

13  an effective pretreatment system to remove sufficiently the pollutants in its industrial wastewater to

14  allow the discharge of its industrial wastewater into the City of Stockton sewer system.  Thus, American

15  Biodiesel was a source of discharges of pollutants subject to the Clean Water Act's pretreatment

16  regulations.  Under the recurring permits issued by the City of Stockton pursuant to the Clean Water

17  Act, American Biodiesel was authorized to discharge only wastewater meeting certain requirements into

18  the City of Stockton sewer system.

19        American Biodiesel's periodic wastewater discharge permits issued from the City of Stockton

20  mandate, among other requirements, the continuous monitoring and recording of flow (the quantity of

21  wastewater discharged to the sewer), as well as continuous monitoring and recording of pH (measuring

22  the acidity/alkalinity of the wastewater).  The permits also required monitoring of the concentration of

23  methanol in the wastewater.

24        American Biodiesel's wastewater discharge permits limited total wastewater flow to the sewer at

25  210,000 gallons per month.  The pH of the wastewater was required to stay between 5.0 and 10.0, and

26  the methanol concentration could not exceed 117 milligrams per liter.  Any wastewater not meeting the

27  permitted requirements was prohibited from discharge into the City of Stockton sewer system.

28  American Biodiesel represented to the City of Stockton that American Biodiesel would transport its

PLEA AGREEMENT                  A-2

1  unpermitted wastewater offsite by tanker truck to an appropriate wastewater disposal facility for

2  treatment, namely, the East Bay Municipal Utility District in Oakland, California.

3          Beginning not later than in or about March 2009 and continuing to on or about December 1,

4  2016, American Biodiesel, Christopher Young, and Jeremiah Young, did knowingly and intentionally

5  conspire with each other, and with others known and unknown, to commit offenses against the United

6  States, to wit:

7                  (1) discharge polluted industrial wastewater into the City of Stockton sewer system, in

8  violation of American Biodiesel's permit issued by the City of Stockton and the Clean Water Act,

9  specifically 33 U.S.C. §§ 1317(d), 1319(c)(2)(A), and 40 C.F.R. § 403.5(b)(2);

10                 (2) tamper with and render inaccurate the monitoring devices and methods, which

11  American Biodiesel was required to maintain under its permit issued by the City of Stockton, for

12  measuring the pH level of the industrial wastewater American Biodiesel discharged into the City of

13  Stockton sewer system, in violation of 33 U.S.C. §§ 1317(d), 1319(c)(4); and

14                 (3) tamper with and render inaccurate the monitoring devices and methods, which

15  American Biodiesel was required to maintain under its permit issued by the City of Stockton, for

16  measuring and recording the flow and volume of the industrial wastewater American Biodiesel

17  discharged into the City of Stockton sewer system, in violation of 33 U.S.C. §§ 1317(d), 1319(c)(4).

18          During the time period beginning in or about 2009 and continuing through December 1, 2016, it

19  was a recurring practice for Christopher Young to direct subordinate employees at American Biodiesel's

20  biodiesel fuel manufacturing plant to discharge hundreds of thousands of gallons of polluted industrial

21  wastewater by various unlawful means, including: (1) application of such wastewater to the grounds at

22  American Biodiesel via landscaping sprinklers in contradiction of its representations in its monthly

23  reports to the City of Stockton that its "Process wastewater is sent off site."; and (2) discharge

24  wastewater directly into the City of Stockton sewer system after tampering with pH, and flow and

25  volume monitoring devices and methods to render the pH, and flow and volume monitoring devices and

26  methods inaccurate and/or bypassing pH, and flow and volume monitoring devices and methods so that

27  the pH and volume of American Biodiesel's industrial wastewater were not accurately monitored and/or

28

PLEA AGREEMENT                          A-3

1 recorded.  Pursuant to Christopher Young's directions, various employees performed these unlawful

2 tasks to discharge American Biodiesel's industrial wastewater.

3        In furtherance of the conspiracy and to effect the objects thereof, the three charged defendants

4 committed the following overt acts.

5        On April 8, 2016; June 14, 2016; June 16, 2016; and July 20, 2016, American Biodiesel and

6 Christopher Young, acting through their subordinate employees, did knowingly tamper with and render

7 inaccurate the monitoring devices and methods, which American Biodiesel was required to maintain

8 under its permit issued by the City of Stockton, for measuring and recording the pH level, and flow and

9 volume of the industrial wastewater American Biodiesel discharged into the City of Stockton sewer

10 system.

11       On April 18, 2016; April 21, 2016; April 22, 2016; May 4, 2016; July 21, 2016; July 26, 2016;

12 November 19, 2016; and December 1, 2016, American Biodiesel, Christopher Young, and Jeremiah

13 Young, all operators of a source located at 809-C Snedeker Avenue, Stockton, California, either

14 personally or acting through their subordinate employees, knowingly tampered with and rendered

15 inaccurate the monitoring devices and methods, which American Biodiesel was required to maintain

16 under its permit issued by the City of Stockton, for measuring and recording the pH level, and flow and

17 volume of the industrial wastewater American Biodiesel discharged into the City of Stockton sewer

18 system.

19       **Count Eleven of the Indictment:**

20       On July 21, 2016, American Biodiesel, Christopher Young, and Jeremiah Young, either

21 personally or acting through their subordinate employees, operated and caused the discharge of

22 industrial wastewater that had a pH of less than 5.0 into the blowdown tank designated Tank 511 that

23 discharged into the City of Stockton sewer system.  On that date, the City of Stockton water regulators

24 conducted a surprise night inspection and discovered American Biodiesel unlawfully disposing of

25 wastewater from Tank 116 through an improvised system of the steel pipe and hose connected to Tank

26 116.  Water regulator Bryan Toledo observed the pH monitor was in manual mode and read 4.89, which

27 is below the permitted range of 5.0 and 10.0 pH, while the pH recording chart read 6.90.  Water

28 regulators used a test strip to confirm that the wastewater's pH was in the high 4 range and below 5.0.

PLEA AGREEMENT                              A-4

1    Jeremiah Young was working during the time of the night inspection.  At the beginning of the

2    inspection, the wastewater flowmeter was reading "0" even though wastewater was discharging into the

3    sewer.  During the time of the inspection, the pH monitor and the information on the paper disk on

4    which pH is recorded never matched.

5              When questioned by the Stockton water regulators, Jeremiah Young offered a false explanation

6    of an accidental discharge for the unmonitored wastewater discharge into the sewer.  Subsequently, on

7    July 26, 2016, prior to another tampering of the monitoring equipment, Christopher Young sent an email

8    to Jeremiah Young stating, "Also since the city [water regulators] is not going to show up this late if you

9    can Jerry rig a way to get waste water out the sewer and modify pH meter and FiT [wastewater flow

10   meter] before you do it and then set them back so James [Lazo, another American Biodiesel employee]

11   is not the wiser then go for it . . . ."  (Bracketed text added.)

12        **Count Fifteen of the Indictment:**

13             On December 1, 2016, American Biodiesel, Christopher Young, and Jeremiah Young, all

14   operators of a source located at 809-C Snedeker Avenue, Stockton, California, either personally or

15   acting through their subordinate employees, knowingly operated and caused the discharge via an

16   improvised flexible hose system of industrial wastewater that had a pH of less than 5.0 into a floor

17   cleanout drain that discharged into the City of Stockton sewer system, in violation of a National

18   Pretreatment Standard, all in violation of 33 U.S.C. §§ 1317(d) and 1319(c)(2)(A); 40 C.F.R

19   § 403.5(b)(2); and 18 U.S.C. § 2(a) and (b).

20             On December 1, 2016, while executing a search warrant at the Community Fuels, United States

21   Environmental Protection Agency and local water regulation agency investigators discovered a hidden

22   cleanout drain in the warehouse and confirmed the cleanout was connected to the sewer and had been

23   used that morning to discharge wastewater.  The cleanout drain had a removable cover to allow access

24   for removing obstructions in the sewer lines.  The cleanout was suspicious because it appeared to have

25   been hidden under the pallet, the screws to hold the metal cover plate in place were missing, and there

26   was a visible wet oily sheen on the cleanout indicating recent contact with an oily liquid.  On the closest

27   wall to the cleanout was metal piping that connected to a length of flexible hose.  The hose easily

28   reached the cleanout and fit inside such that the hose could have been used to discharge wastewater into

PLEA AGREEMENT                           A-5

1  the cleanout.  Investigators took three samples of the wastewater for pH analysis and all three samples

2  tested below 5.0 pH, which is not permitted for discharge into the sewer system.

3       American Biodiesel employee Patrick McCarthy confirmed that on the morning of December 1,

4  2016, "a pump was running" in the area of Tank 116, but there was no truck to haul the wastewater.

5  Asked in a follow-up interview when American Biodiesel had most recently discharged process

6  wastewater to the sewer, McCarthy replied that the most recent discharge was early that morning of

7  December 1, before the search warrant was executed.  McCarthy explained that he arrived at

8  Community Fuels at approximately 5:30 a.m. and found a hose in the warehouse connected to the

9  hardline on the wall dumping into the cleanout—the same area agents discovered during the warrant.

10  McCarthy said that he discovered the dumping because he heard the sound of an air pump in the process

11  room and went to check it out.  He saw the flexible hose in the cleanout dumping waste water.

12  McCarthy explained that the flexible hose near the cleanout was connected to a hardline on the wall and

13  that the hardline was connected to Tank 116, which is American Biodiesel's wastewater tank.

14  McCarthy said that "you just have to open and close the correct valves" and the wastewater from Tank

15  116 would flow through the hardline and flexible hose into the cleanout.  McCarthy said that Jeremiah

16  Young was the only person at the facility when McCarthy arrived that morning.

17      **Damages from American Biodiesel's Crimes**

18       As a direct result of American Biodiesel's criminal conduct and violations of the Clean Water

19  Act, the Port of Stockton incurred $248,947 in expenses, comprised of $192,450 for sewage clogs and

20  overflow repairs, and damage to infrastructure, and $56,497 for payments made by Port of Stockton to

21  City of Stockton for treatment of unlawfully discharged wastewater.  In addition, the City of Stockton

22  incurred $7,259 in expenses for damage and repairs to its sewer infrastructure.

23

24

25

26

27

28

PLEA AGREEMENT             A-6

## CERTIFICATE OF AMERICAN BIODIESEL, INC.
## BOARD RESOLUTIONS

I, Lisa Mortenson, Chief Executive Officer, President, and Corporate Secretary of American Biodiesel, Inc., dba Community Fuels, a company organized and existing under the laws of the State of California, do hereby certify that the following is a true, complete and correct original copy of resolutions adopted by unanimous consent of the entire Board of Directors of American Biodiesel, Inc., on December 12, 2018. I further certify that such resolutions have not been amended, modified or repealed, and remain in full force and effect, as of the date hereof.

Dated:  December 12, 2018

Lisa Mortenson
Chief Executive Officer, President, and Corporate
Secretary of American Biodiesel, Inc.

## RESOLUTION MEMORIALIZING UNANIMOUS WRITTEN CONSENT OF
## THE BOARD OF DIRECTORS OF AMERICAN BIODIESEL, INC.

The undersigned Directors, constituting the entire Board of Directors (the "Board of Directors") of American Biodiesel, Inc., dba Community Fuels ("American Biodiesel"), having met, considered, and conferred hereby take the following actions and adopt the following resolution by unanimous written consent:

The Board of Directors of American Biodiesel, Inc. resolve that:

Whereas, the Board of Directors has received, read, considered, and been fully informed by its legal counsel of the Plea Agreement, a copy of which is attached hereto (the "Plea Agreement") with plaintiff United States of America in connection with the United States' investigation and prosecution of alleged criminal violations of the Clean Water Act and other federal laws as contained in the Indictment, a copy of which is attached hereto; and

Whereas, the Board of Directors hereby deems it advisable and in the best interests of American Biodiesel to approve the execution and delivery of the Plea Agreement, enter the guilty pleas required under the Plea Agreement, and agree to and comply with all terms and conditions, including the agreed upon sentence set forth in the Plea Agreement;

Now therefore, be it hereby resolved, that:

The terms and conditions of the Plea Agreement and any documents ancillary thereto or contemplated therein to which American Biodiesel is to be a party (collectively the "Plea Agreement Documents"), and the performance by American Biodiesel of all of its obligations pursuant to any of the Plea Agreement Documents, be, and they hereby are, in all respects authorized, ratified, approved and confirmed;

1

Brad Baker, Chairman of the Board of American Biodiesel, is authorized, empowered and directed to (1) execute and deliver the Plea Agreement and all other documents pertaining to the Plea Agreement in the name and on behalf of American Biodiesel; and (2) take such further actions as he deems necessary, proper or advisable to implement the foregoing resolution; and

Brad Baker, Chairman of the Board of American Biodiesel, is authorized, empowered and directed to represent American Biodiesel before any court or governmental agency in order to make the admissions, statements, and confirmations in accordance with the Plea Agreement, including entering the guilty pleas and agreements referenced in the Plea Agreement on behalf of American Biodiesel.

Executed in San Diego, California on December/2 2018 by:

_____
(Insert name of Director)
JETHREN P. PHILLIPS

_____
(Insert name of Director)

_____
(Insert name of Director)
LISA MORTENSON

_____
(Insert name of Director)

_____
(Insert name of Director)

_____
(Insert name of Director)

_____
(Insert name of Director)

_____
(Insert name of Director)

2

Brad Baker, Chairman of the Board of American Biodiesel, is authorized, empowered and directed to (1) execute and deliver the Plea Agreement and all other documents pertaining to the Plea Agreement in the name and on behalf of American Biodiesel; and (2) take such further actions as he deems necessary, proper or advisable to implement the foregoing resolution; and

Brad Baker, Chairman of the Board of American Biodiesel, is authorized, empowered and directed to represent American Biodiesel before any court or governmental agency in order to make the admissions, statements, and confirmations in accordance with the Plea Agreement, including entering the guilty pleas and agreements referenced in the Plea Agreement on behalf of American Biodiesel.

Executed in San Diego, California on December 14 2018 by:

_____
(Insert name of Director)

JEFF ALLEN
_____
(Insert name of Director)

_____
(Insert name of Director)

_____
(Insert name of Director)

_____
(Insert name of Director)

_____
(Insert name of Director)

_____
(Insert name of Director)

_____
(Insert name of Director)

2

Brad Baker, Chairman of the Board of American Biodiesel, is authorized, empowered and directed to (1) execute and deliver the Plea Agreement and all other documents pertaining to the Plea Agreement in the name and on behalf of American Biodiesel; and (2) take such further actions as he deems necessary, proper or advisable to implement the foregoing resolution; and

Brad Baker, Chairman of the Board of American Biodiesel, is authorized, empowered and directed to represent American Biodiesel before any court or governmental agency in order to make the admissions, statements, and confirmations in accordance with the Plea Agreement, including entering the guilty pleas and agreements referenced in the Plea Agreement on behalf of American Biodiesel.

Executed in San Diego, California on December _04_ 2018 by:

_____
(Insert name of Director)

DANIEL  J.  LANAHAN

_____
(Insert name of Director)

_____
(Insert name of Director)

_____
(Insert name of Director)

_____
(Insert name of Director)

_____
(Insert name of Director)

_____
(Insert name of Director)

_____
(Insert name of Director)

2